## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY,<br><br>    Plaintiffs,<br><br>    v.<br><br>LAMBOLL STREET, LLC and WESTOWN RETAIL II 42 ACRES, LLC,<br><br>    Defendants. | Case No.: _____ |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiffs Hartford Fire Insurance Company and Hartford Casualty Insurance Company (together, "Hartford") sue Lamboll Street, LLC ("Lamboll") and Westown Retail II 42 Acres, LLC ("Westown"), alleging as follows:

### NATURE OF ACTION

1. In this action, Hartford seeks a declaration that it is not obligated to defend or indemnify Lamboll and Westown, under liability insurance policies that Hartford issued to Lamboll, in the consolidated actions styled: *Cincinnati Insurance Company v. Shore Services, Inc., et al.*, C.A. No. N15C-09-184 CEB (Del. Super.) and *Kathy A. Hurley, et al. v. Shore Services, Inc.*, C.A. N15C-09-180 CEB (Del. Super.) (the "Underlying Lawsuit").

2. The Underlying Lawsuit seeks damages from Lamboll and Westown on the ground that they "owned, occupied, and/or controlled" the construction site where Jerry D. Hurley died in a construction accident on September 23, 2013.

3. Lamboll and Westown contend that Hartford must defend and indemnify them against the Underlying Lawsuit.

4. Although it is defending Lamboll and Westown in the Underlying Lawsuit under a reservation of rights, Hartford believes that it owes no defense or indemnity obligation to either Lamboll or Westown in connection with that suit. As a result, a justiciable controversy exists between the parties. The purpose of this action is to resolve that dispute.

## THE PARTIES

5. Hartford Fire Insurance Company is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

6. Hartford Casualty Insurance Company is an Indiana corporation with its principal place of business in Hartford, Connecticut.

7. Lamboll is a Delaware limited liability company that, on information and belief, does business in Delaware. On information and belief, no member of Lamboll is a citizen of Connecticut or Indiana.

8. Westown is a Delaware limited liability company that, on information and belief, does business in Delaware. On information and belief, no member of Westown is a citizen of Connecticut or Indiana.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this case under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and is between citizens of different States.

11. This Court has personal jurisdiction over Lamboll and Westown because Lamboll and Westown are each Delaware limited liability companies and, additionally, each is engaged in substantial activities within this State. *See* 10 Del. C. § 3104.

12. This Court has the power to grant the declaratory relief sought by Hartford under 28 U.S.C. §§2201 and 2202.

13. Venue is proper in this judicial district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## THE UNDERLYING LAWSUIT

14. The amended complaint in the Underlying Lawsuit, attached to this complaint as Exhibit 1, contains the following allegations:

   a) Jerry D. Hurley died in a work-related accident on September 23, 2013, at a construction project located at North Merrimac Avenue and Commerce Drive in the Town of Middletown, Delaware (the "Project Site"). Ex. 1, ¶8.

   b) the Project Site was owned, occupied, and controlled by Lamboll and/or Westown. Ex. 1, ¶9.

   c) Mr. Hurley was employed by Austin & Bednash Construction, Inc. ("Austin & Bednash"), which contracted to perform site work at the Project Site. Ex. 1, ¶¶11,12.

   d) Woodin + Associates, LLC ("Woodin + Associates") was retained by Lamboll and/or Westown to provide geotechnical and civil engineering services at the Project Site. Ex.1, ¶13.

   e) Austin & Bednash engaged Shore Services, Inc. ("Shore Services") as its dewatering subcontractor at the Project Site. Ex.1, ¶16.

   f) Austin & Bednash relied on the work of Woodin + Associates in performing its site work. Ex.1, ¶15.

   g) While Mr. Hurley was employed by Austin & Bednash at the Project Site on September 23, 2013, the ground beneath his feet gave way and he fell into a sinkhole, as a result of which he died from asphyxiation. Ex.1, ¶¶21-23.

   h) As the workers' compensation insurer of Austin + Bednash, Cincinnati Insurance Company paid workers' compensation benefits to Mr. Hurley's estate. Ex.1, ¶28.

15. On September 21, 2015, Cincinnati Insurance Company filed the Underlying Lawsuit asserting its subrogated interest in recovering the sums it has paid and will continue to pay because of Mr. Hurley's death, as the workers' compensation insurer of Austin & Bednash.

16. On January 26, 2016, Cincinnati Insurance Company amended its complaint to identify the defendants as Shore Services, Inc., Woodin + Associates, LLC, Lamboll Street, LLC, and Westown Retail II 42 Acres, LLC.

17. Count I of the amended complaint asserts a cause of action for negligence against Shore Services. Count II of the amended complaint asserts a cause of action for breach of contract against Shore Services. Count III of the amended complaint asserts a cause of action for negligence against Woodin + Associates. Count IV of the amended complaint asserts a cause of action for negligence against Lamboll and Westown.

18. The Underlying Lawsuit alleges that Lamboll and/or Westown owed a duty of care to all invitees present at the Project Site for business purposes, including Mr. Hurley, because Lamboll and/or Westown owed, occupied, and/or controlled the Project Site. Ex.1, ¶55.

19. The Underlying Lawsuit further alleges that Lamboll and/or Westown breached the duty of care owed to Mr. Hurley by:

   a. Failing to appropriately and reasonably vet, retain, monitor, and/or supervise entities and individuals contracted to perform geotechnical and/or engineering services or related activities with regard to the Project Site;

   b. Failing to provide accurate or sufficient observations, findings, recommendations, instructions and/or warnings to entities and individuals present at the Project Site necessary to permit adequate and safe monitoring of the dewatering system.

  c. Failing to warn entities and individuals present at the Project Site of dangers and risks of which Lamboll and/or Westown knew or reasonably should have known under the circumstances, including the possibility of a sinkhole or other destabilization of the earth at or about the Project Site; and

  d. Failing to act or refrain from acting as was reasonable and appropriate under the circumstances.

Ex.1, ¶56.

20. On September 21, 2015, Kathy A. Hurley, individually and as Personal Representative of the Estate of Mr. Hurley, Kristen Cole, Jamie Garvin, and Erin Ferdinando filed suit against Shore Services in an action styled *Kathy A. Hurley, et al. v. Shore Services, Inc.*, C.A. No. N15C-09-180 CEB (Del. Super.) (the "Hurley Lawsuit").

21. The Hurley Lawsuit does not assert any claims against Lamboll or Westown.

22. On April 13, 2016, the Hurley Lawsuit was consolidated with the Underlying Lawsuit for purposes of discovery and trial.

## THE HARTFORD POLICIES

### The Primary Policy

23. Hartford issued to Lamboll a Special Multi-Flex Policy number 22 UUN ZI6321 with a policy period of October 3, 2012 to October 3, 2013, attached to this complaint as Exhibit 2, that included property, commercial auto and general liability insurance. The general liability portion of the policy is referred to in this complaint as the "Primary Policy".

24. Lamboll is a named insured on the Primary Policy.

25. Westown is not a named insured and does not otherwise qualify as an insured on the Primary Policy.

26. The Primary Policy provides in Section II entitled "WHO IS AN INSURED" that

"No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

27. The Primary Policy excludes coverage for bodily injury arising out of "real estate development property," unless that property is specifically described in a separate schedule on the policy, by including an endorsement on Form HC 21 11 07 98, which provides as follows:

**EXCLUSION - EXPOSURES NOT CONTEMPLATED IN CLASSIFICATION (VACANT LAND)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**EXCLUSION SCHEDULE**

(a) "real estate development property"

(b) vacant land used by persons other than the insured for business purposes

(c) hunting preserves.

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any premises, hazards or operations shown in the Exclusion Schedule.

This Exclusion does not apply to any premises, hazards or operations specifically described as covered in a schedule forming a part of this Coverage Part.

"Real estate development property" means land in any stage of active development. Active development includes site preparation work as well as actual construction activities.

This exclusion is referred to in this complaint as the "Real Estate Development Property Exclusion."

28. The Project Site is not identified on any schedule on the Primary Policy.

6

29. The Primary Policy also excludes bodily injury arising out of contracting and subcontracting operations unless those operations are identified on a separate schedule on the policy, by including an endorsement on Form HC 21 10 06 08, which provides as follows:

**EXCLUSION - EXPOSURES NOT CONTEMPLATED
IN CLASSIFICATION
(REAL ESTATE DEVELOPMENT PROPERTY)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**EXCLUSION SCHEDULE**

    (a)    contracting operations of any kind

    (b)    subcontracted operations

    (c)    model homes

    (d)    vacant buildings

    (e)    vacant land not being actively developed which is physically separated from any "Real Estate Development Property".

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of any premises, hazards or operations shown in the Exclusion Schedule.

This exclusion does not apply to any premises, hazards or operations specifically described as covered in a schedule forming a part of this Coverage Part.

"Real estate development property" means land in any stage of active development. Active development includes site preparation work as well as actual construction activities.

This exclusion is referred to in this complaint as the "Contracting and Subcontracting Exclusion."

30. Contracting and subcontracting are not identified as covered operations on any

7

separate schedule on the Primary Policy.

31. The Primary Policy also includes Form CG 22 33 07 98, which provides as follows:

### EXCLUSION - TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** An error, omission, defect or deficiency in:

  **a.** Any test performed; or

  **b.** An evaluation, a consultation or advice given, by or on behalf of any insured;

**2.** The reporting of or reliance upon any such test, evaluation, consultation or advice; or

**3.** An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

This exclusion is referred to in this complaint as the "Testing or Consulting Exclusion."

32. The Primary Policy also includes Form CG 22 43 07 98, which provides as follows:

### EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

This exclusion is referred to in this complaint as the "Professional Services Exclusion."

## The Umbrella Policy

33. Hartford Casualty Insurance Company issued to Lamboll an umbrella insurance policy number 22 XHU ZI5523 with a policy period of October 3, 2012 to October 3, 2013 (the "Umbrella Policy"). The Umbrella Policy is attached to this complaint as Exhibit 3.

34. Lamboll is a named insured on the Umbrella Policy.

35. Westown is not a named insured and does not otherwise qualify as an insured on the Umbrella Policy.

36. The Umbrella Policy provides in Section III entitled "WHO IS AN INSURED" that "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

37. The Umbrella Policy includes exclusions that are substantively identical, in

every way relevant to this action, to the Real Estate Development Property Exclusion, the Contracting and Subcontracting Exclusion, the Testing and Consulting Exclusion, and the Professional Services Exclusions on the Primary Policy.

## COUNT I
### Declaratory Judgment that Westown is Not an Insured

38. Hartford incorporates herein by reference each and every allegation of the preceding paragraphs as if each were fully set forth herein.

39. Westown is not a named insured and does not qualify as an insured on either the Primary Policy or the Umbrella Policy.

40. Because it is not a named insured and does not otherwise qualify as an insured on either the Primary Policy or the Umbrella Policy, Westown has no rights under those policies and is not entitled to a defense or indemnity from Hartford concerning the Underlying Lawsuit.

## COUNT II
### Declaratory Judgment that Lamboll is Not an Insured
### With Respect to Liability Arising Out of the Conduct of Westown

41. Hartford incorporates herein by reference each and every allegation of the preceding paragraphs as if each were fully set forth herein.

42. Lamboll is not an insured under either the Primary Policy or the Umbrella Policy with respect to liability arising out of the conduct of Westown, which is an LLC, because both policies provide that: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."

43. On information and belief, Westown was the owner of the Project Site on September 2, 2013, the date of Mr. Hurley's accident.

44. On information and belief, at the time of the accident Lamboll was the sole

member of SD Investment Properties, LLC, which was the sole member of Westown, and Lamboll had no other connection to the Project Site.

45. To the extent Lamboll's liability, if any, in the Underlying Lawsuit arises out of conduct of Westown, Lamboll is not an insured on the Primary Policy or the Umbrella Policy.

## COUNT III
### Declaratory Judgment that Lamboll and Westown Are Not Entitled to a Defense or Indemnity Because of the Real Estate Development Property Exclusion

46. Hartford incorporates herein by reference each and every allegation of the preceding paragraphs as if each were fully set forth herein.

47. Even if Lamboll and/or Westown were insureds under the Primary Policy or the Umbrella Policy with respect to the Underlying Lawsuit, they would have no right to defense or indemnity concerning the claims in that suit because those claims seek damages because of bodily injury arising out of site preparation work on land undergoing active development and coverage for such claims is barred by the Real Estate Development Property Exclusion on the Primary Policy and Umbrella Policy.

## COUNT IV
### Declaratory Judgment that Certain Exclusions on the Primary and Umbrella Policies May Defeat Any Indemnity Obligation Under Those Policies for the Claims Asserted in the Underlying Lawsuit

48. Hartford incorporates herein by reference each and every allegation of the preceding paragraphs as if each were fully set forth herein.

49. The Underlying Lawsuit alleges that Woodin + Associates and Shore Services, as contractors and subcontractors, respectively, of Lamboll and Westown, failed to properly perform their work at the Project Site, as a result of which Mr. Hurley died in an accident at the Project Site. Ex. 1, ¶¶31-53.

50. To the extent the liability, if any, of Lamboll and/or Westown in the

Underlying Action arises out of their contracting or subcontracting operations, that liability is excluded from coverage under the Contracting and Subcontracting Exclusion on the Primary Policy and the Umbrella Policy.

51. The Underlying Lawsuit alleges that Woodin + Associates failed to, among other things, "use appropriate methods to inspect, test, and/or analyze the surface and subsurface conditions" at the Project Site and otherwise failed property to perform the professional services it contracted to perform at the Project Site. Ex. 1, ¶51.

52. The Underlying Lawsuit alleges that Shore Services failed to, among other things, properly "monitor and/or operate the dewatering system" at the Project Site "perform appropriate calculations and/or employ such other technical or professional standards as were appropriate" at the Project Site. Ex 1. ¶42.

53. To the extent the liability, if any, of Lamboll and/or Westown in the Underlying Action arises out of an "error, omission, defect or deficiency in . . .any test performed or an evaluation, a consultation or advice given, by or on behalf of any insured," that liability is excluded from coverage by the Testing and Consulting Exclusion on the Primary Policy and the Umbrella Policy.

54. To the extent the liability, if any, of Lamboll and/or Westown in the Underlying Action arises out of "the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity" that liability is excluded from coverage by the Professional Services Exclusion on the Primary Policy and the Umbrella Policy.

## REQUESTED RELIEF

WHEREFORE, Hartford asks the Court to declare:

1) That Westown is not an insured under the Primary Policy or the Umbrella Policy and is not entitled to a defense or to indemnity in connection with the Underlying Lawsuit under either of those policies;

2) That to the extent Lamboll's liability, if any, in the Underlying Lawsuit arises out of the conduct of Westown, Lamboll is not an insured on the Primary Policy or the Umbrella Policy and Hartford is not obligated to indemnify Lamboll against the Underlying Lawsuit;

3) That neither Lamboll nor Westown is entitled to a defense or indemnity against the Underlying Lawsuit under the Primary Policy or the Umbrella Policy because the Real Estate Development Property Exclusion on those policies bars coverage for the claims asserted in the Underlying Action;

4) The extent to which the Contracting and Subcontracting Exclusion, the Testing and Consultation Exclusion, and the Professional Services Exclusion defeat any indemnity obligation by Hartford to Lamboll and/or Westown in connection with the Underlying Lawsuit; and

5) Hartford is entitled to such other and further relief as is appropriate under the circumstances.

[Signature on next page.]

|  |  |
|---|---|
| Wilmington, DE<br>DATED: September 26, 2016 | **ELZUFON AUSTIN**<br>**TARLOV & MONDELL, P.A.** |
|  | */s/ Peter C. McGivney*<br>JOHN A. ELZUFON (DE Bar Id. 177)<br>PETER C. MCGIVNEY (DE Bar Id. 5779) |
| *Of Counsel:*<br>KRAMON & GRAHAM, PA<br>Lee H. Ogburn<br>Ezra S. Gollogly<br>One South Street, Suite 2600<br>Baltimore, MD 21202<br>(410) 752-6030 | 300 Delaware Avenue, Suite 1700<br>P.O. Box 1630<br>Wilmington, DE 19899-1630<br> (302) 428-3181<br>*Attorneys for Plaintiffs* |

G:\Docs\CLIENT\01\00000\PLEADING\01111490.DOCX